# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re

Case No. 05-32479-DHW
Chapter 13

FELICIA LANELL WILLIAMS,

    Debtor.

## MEMORANDUM OPINION

Felicia Lanell Williams filed a motion under 11 U.S.C. § 522(f)(1)(B) to avoid the lien of Hainje's, Inc. as a nonpossessory, nonpurchase-money security interest in household goods.

Hainje's filed an objection contending that the lien is a purchase-money security interest. Hainje's also objected to confirmation of the debtor's proposed chapter 13 plan.

An evidentiary hearing on the two matters was held December 12, 2005. At issue is whether the lien of Hainje's constitutes a purchase-money security interest. Further, if the lien is a purchase-money security interest, then the value of the collateral is also in dispute.

## Jurisdiction

The court's jurisdiction derives from 28 U.S.C. § 1334 and from the district court's general order referring title 11 matters to this court. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and as a result, the court's jurisdiction extends to the entry of a final order or judgment.

## Findings of Fact

In January 2005 the debtor's live-in friend, Michael E. Stallworth, purchased a sofa and 3 tables from Hainje's for $900 and $300, respectively. See Exhibit D-A. Included in this transaction was a $972.87 balance brought forward from a prior transaction secured by a

weedeater.

The next month Stallworth purchased a stereo system from Hainje's for $1,300. See Exhibit D-B. Although Stallworth kept all of these items at the debtor's home where he lived, the debtor was not a party to either of the contracts between Stallworth and Hainje's.

Thereafter, the debtor and Stallworth broke up. Stallworth moved from the debtor's home leaving the sofa, tables and stereo system with the debtor. Stallworth did not leave the weedeater.

The debtor wished to retain the goods left by Stallworth. On July 19, 2005, she entered into a retail installment contract with Hainje's. See Exhibit D-C. Therein, the debtor purchased the goods for the $3,085 outstanding balance on Stallworth's two accounts.

The debtor filed this chapter 13 case on August 23, 2005, slightly over one month after entering into the contract with Hainje's.

The debtor's original chapter 13 plan provided for Hainje's as a secured creditor.[1] The debtor valued the property securing the Hainje's claim at $1,450. The debtor testified that the sofa, tables and stereo system were all in good condition and good working order.

Victor Norris, a manager of a Hainje's store, testified that a used sofa, tables, and stereo system, like those owned by the debtor, could be sold in today's market for approximately $1,850.

## Conclusions of Law

The debtor filed a motion to avoid the lien of Hainje's pursuant to 11 U.S.C. § 522(f)(1)(B)(i). Under that provision of the Code, the debtor

---

[1] Since filing the plan, however, the debtor has moved to avoid the lien of Hainje's contending that the security interest is an avoidable nonpurchase-money interest in household goods.

2

Case 05-32479   Doc 25   Filed 01/11/06   Entered 01/11/06 15:03:00   Desc Main
Document      Page 2 of 6

may avoid a nonpossessory, nonpurchase-money security interest in household goods and furnishings to the extent that such lien impairs the debtor's exemption in the property. If the debtor prevails, the claim of Hainje's will be treated as unsecured under the plan.

The debtor contends that Hainje's did not receive a purchase-money security interest ("PMSI") under the January 2005 contract with Stallworth because it consolidated that account with the antecedent account secured by the weedeater.[2] The debtor further contends that by combining Stallworth's two accounts into the July 2005 contract with the debtor, Hainje's lost any PMSI under the July contract. The debtor points to the holding in Snap-On Tools, Inc. v. Freeman (In re Freeman), 956 F.2d 252 (11th Cir. 1992) as support for these contentions. In Freeman the court wrote:

> A security interest in collateral is "purchase money" to the extent that the item secures a debt for the money required to make the purchase. If an item of collateral secures some other type of debt, e.g., antecedent debt, it is not purchase money.

Id. at 254-55 (citing Fickey v. Bank of LaFayette (In re Fickey), 23 B.R. 586, 588 (Bankr. E.D. Tenn. 1982). The court went on to hold that:

> to enforce a PMSI that consolidates a customer's secured debts, . . . the lender must provide some method "for determining the extent to which each item of collateral secures its purchase money."

Id. at 255 (quoting Southtrust Bank v. Borg-Warner Acceptance Corp., 760 F.2d 1240, 1243 (11th Cir. 1985).

The debtor's arguments, however, are not well taken. Hainje's

---

[2] Hainje's had a purchase-money security interest with respect to Stallworth only on the February 2005 contract (stereo).

3

may well have lost any PMSI under the January 2005 contract with Stallworth due to consolidation with the antecedent debt. However, the debtor was not a party to that contract. Indeed, the only contract in which the debtor has been in privity with Hainje's is the retail installment contract dated July 19, 2005. There, Hainje's sold the debtor the sofa, tables and stereo system for an amount equal to the unpaid balance of Stallworth's account and retained a security interest in those goods to secure the purchase price.[3] Since that time, Hainje's has neither refinanced nor combined the debtor's account with another obligation, antecedent or otherwise.

Contrary to the debtor's assertions, the weedeater is not collateral for the July 2005 contract. The contract expressly lists the collateral as a "Seminole Sectional LRS" and "JVC Stereo." "LRS" stands for living room suit and embraces both the sofa and the 3 tables.[4] The weedeater is not listed as collateral. Indeed, the debtor testified that she never had possession of the weedeater. She purchased solely the items left by Stallworth – the sofa, tables, and stereo system.[5]

For these reasons the court concludes that Hainje's holds a purchase-money security interest in the debtor's sofa, tables, and stereo system that are the subject of this action. Therefore, Hainje's lien is not

---

[3] Under Alabama law a security interest is a purchase money one to the extent that it is taken or retained by the seller of the collateral to secure all or part of its price. See Alabama Code § 7-9A-103 (1975).

[4] The debtor contends that this designation covers only the sofa. Therefore, the debtor states that one can determine that the tables are collateral only by reference to the prior contracts with Stallworth. The court disagrees.

[5] Because the weedeater is not collateral for the July 2005 contract, the debtor's argument concerning the "transformation rule" of Snap-on Tools is simply inapplicable. The July 2005 contract constituted a new contract solely between Hainje's and the debtor for the purchase of the used sofa, tables, and stereo. The debtor did not purchase the weedeater under this contract; nor was it included as additional collateral. Therefore, it did not destroy the purchase-money nature of the transaction.

4

avoidable under 11 U.S.C. § 522(f)(1).

The parties also disagree as to the value of the collateral. The debtor contends that the sofa, tables, and stereo system are worth $1,450, while Hainje's maintains that the proper value is $1,850. Guided by the Supreme Court's holding in Associates Commerical Corp. v. Rash, 520 U.S. 953, 117 S. Ct. 1879, 138 L. Ed. 2d 148 (1997)(holding that replacement value is the proper method for collateral valuation in a chapter 13 "cram down" setting), the court is persuaded that the collateral is worth $1,850.

First, the collateral is all less than one year old. The original purchase price was $2,500. A valuation of $1,850 represents a 26% reduction of the purchase price as a result of depreciation. The debtor's valuation of $1,450 would represent a 42% reduction in the purchase price for property that is only a few months old.

Second, on July 19, 2005 the debtor agreed to purchase this property for the balance remaining on Stallworth's accounts, $3,085.53. Improvident as that may have been, the fact that the debtor was willing to pay such a large amount in order to keep the property indicates that the higher valuation is correct.

Finally and most persuasively, Victor Norris testified that the collateral could be resold for $1,850. As an employee of Hainje's, Norris's testimony may not be completely unbiased. Nevertheless, Norris is engaged in the business of selling goods of this sort, and his opinion of its value is due greater deference than that of the debtor, who has no special skill, training, or experience in the valuation of used furniture and electronics.

## Conclusion

For the foregoing reasons both Hainje's objection to the confirmation of the debtor's plan and its objection to the avoidance of its lien are due to be sustained. Separate orders will enter denying plan

5

confirmation, denying the debtor's motion to avoid the lien, and conditionally dismissing the case.

Done this the 11th day of January, 2006.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtor
Forrest C. Rule, Jr., Attorney for Debtor
Leonard N. Math, Attorney for Creditor
Curtis C. Reding, Trustee

6